## EDDINS *v.* STATE.

### [70 South. 898.]

1. JURY. *Challeneges to panel. Grounds, criminal law. Change of venue. Local prejudice.*

   Where on the trial of a murder case the sheriff and the circuit clerk who took part in the selection of the venire for the week from which was selected the grand jury and the trial jury, were kinsmen of the deceased, and a majority of the names put into the jury box were persons residing in the supervisor's district in which the homicide occurred, on motion the court should have quashed the jury box.

2. CRIMINAL LAW. *Change of venire. Local prejudice.*

   When the atmosphere in a county was not such as would insure a fair trial to a person charged with murder he had a right to a change of venue, especially when the sheriff and the circuit clerk who took part in the selection of the venire were kinsmen of the deceased, and a majority of the names put into the jury box were persons residing in the supervisor's district where the homicide occurred, and where after, the venire was quashed on defendant's motion, a new venire was ordered and the sheriff proceeded to summon fifty-five of the same men, thereby compelling defendant to select a jury from the very men he had rejected to their knowledge.

APPEAL from the circuit court of Jasper county.
HON. W. H. HUGHES, Judge.

The facts are fully stated in the opinion of the court.

*Wells, May & Sanders, McFarland & Brown* and *McBeath & Miller,* for appellant.

*Lamar F. Easterling,* Assistant Attorney-General, for the state.

COOK, P. J., delivered the opinion of the court

We have read the evidence in this case with great care, and, taking the view of the state, we believe that

the jury was warranted in finding the defendant guilty of murder.

If each assignment of error is considered alone, and without reference to the other alleged errors of the court, it may be that the judgment of the trial court would have to be affirmed.

If we take the record as a completed history of the trial, and consider every incident thereof in its relation to the whole, we find ourselves impressed with a belief that appellant did not, and could not, have obtained a fair consideration of his case by an impartial jury to be drawn from the district of the county in which he was tried.

In the first place the sheriff and the circuit court clerk who took part in the selection of the venire for the week, from which was selected the grand jury and the trial jury, were kinsmen of the deceased. In the next place, it was shown that a majority of the names put into the jury box were persons residing in the supervisor's district in which the homicide occurred. In the third place, the court refused to quash the jury box, which was error, but after a venire to try defendant was drawn from that box—an unlawful box—the court, upon motion of defendant, quashed the venire, and announced to the veniremen then sitting in the court-room that they were not excused, but they would "sit steady in the boat," or words to that effect. A new venire was ordered, whereupon the sheriff, a kinsman of deceased, proceeded to resummon fifty-five of the same men to try the defendant. This, every lawyer will appreciate, was a serious blow to the defendant, being compelled to select a jury from a lot of men whom he had rejected, and who knew he had, in effect, said he did not want on a jury to try his case. Previous to this unfortunate incident, and in the early part of the game, the defendant had asked for a change of venue, which had been overruled by the court, whereupon, appreciating that he was "up against it" if he should be com-

pelled to select a jury from the very men he had openly discarded, the defendant renewed his motion for a change of venue, which was again promptly overruled. We are constrained to believe that the court "held the defendant's nose to the grindstone," at every step in the case. Looking over the record of the evidence taken on the motion for a new trial, we are impressed with the thought that the court unwittingly resolved every doubt against the defendant, and the reason for his having done so is probably ·to be found in this statement from the bench. The judge had evidently sounded public opinion, and he did not hesitate to say that his own investigations led him to believe that the public had not prejudged the defendant's case. The learned judge seemed to be impressed with the idea that a change of venue would, in some way, reflect upon the well known civic virtue of the citizenry of the good county of Jasper. It is obvious that the judge weighed his own opinion against that of the sworn witnesses, and as we are all human, and a circuit judge especially has a rough and rocky road to travel, we·are not disposed to criticise the judge for believing that the witnesses who said defendant could not get a fair and impartial trial in that jurisdiction were mistaken. There was evidence, of course, to sustain the ruling of the court; and, if we segregate this point from the entire case, we would, no doubt, affirm this case.

The writer, particularly, has every reason to sympathize with a trial judge, and to appreciate the nervous strain that he undergoes in an endeavor to uphold the majesty of the law, and nothing said in this opinion is to be taken as a criticism of the trial judge in this case. The circuit judge may, after all, have been right in his conclusions, but we must take the case as it appears to us, and, in doing so, we are thoroughly convinced that the atmosphere in Jasper county was not such as would insure a fair trial to the defendant. The facts of the present case are unique, and we are of opinion that the

trial court should have sustained the motion for a change of venue.

There are many things in this record which could be mentioned in support of this view; but, as this case will be retried, we refrain from commenting upon the evidence.

The right to trial by an impartial jury is guaranteed by the organic law of the state, and when it is doubtful that such a jury can be obtained in the county of the venue of the homicide, the person on trial for his life is but asking for his rights when he requests a change of venue, and there is no imaginable reason to refuse, except, possibly, a slight additional cost to the county.

*Reversed and remanded.*