441 So.2d 1365 (1983)
Mack Arthur KING
v.
Morris THIGPEN, Commissioner, Mississippi Department of Corrections, et al.
No. 53027.
Supreme Court of Mississippi.
December 14, 1983.
Wilbur O. Colom, Colom, Mitchell & Colom, Columbus, James E. Rocap, III, Washington, D.C., for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellees.
EN BANC.

*1366 ON APPLICATION FOR LEAVE TO FILE A PETITION FOR WRIT OF ERROR CORAM NOBIS[1]
WALKER, Presiding Justice, for the Court:
On December 4-5, 1980, Mack Arthur King was tried, convicted and sentenced to suffer death in the manner provided by law in the Circuit Court of Lowndes County, Mississippi. On October 27, 1982, the Supreme Court of Mississippi affirmed the conviction and sentence. King v. State, 421 So.2d 1009 (Miss. 1982). On December 1, 1982, the Supreme Court of Mississippi denied petitioner's petition for rehearing. On January 31, 1983, petitioner's family filed in the United States Supreme Court a petition for a writ of certiorari to the Supreme Court of Mississippi. On May 2, 1983, that petition was denied. Petitioner's execution date was scheduled for July 13, 1983, but was stayed pending disposition of this application for leave to file a petition for writ of error coram nobis in the Circuit Court of Lowndes County, Mississippi.
King's application for leave to file a petition for writ of error coram nobis asserts that it should be granted for the following reasons:

A.

THE FAILURE TO INSTRUCT THE JURY THAT IT COULD IMPOSE A LIFE SENTENCE EVEN IF THE AGGRAVATING CIRCUMSTANCES OUTWEIGHED THE MITIGATING CIRCUMSTANCES VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS.
This proposition was presented in part by appellant's proposition three of appellant's brief on direct appeal to this Court from his conviction and sentence and the Court found no merit to the contention as presented. Thereafter, his petition for rehearing was denied.
To the extent that said issue was presented on direct appeal and ruled on by this Court after consideration on the merits, it may not be relitigated again on this petition for writ of error coram nobis. Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983).
Further, to the extent that his present contention was not alleged as error and briefed on direct appeal, the issue may not now be raised for the first time on this petition for writ of error coram nobis as it is procedurally barred. Wheat, supra.

B.

THE SENTENCING INSTRUCTION IMPERMISSIBLY SUBJECTED PETITIONER TO A MANDATORY IMPOSITION OF THE DEATH PENALTY.
This proposition may not now be raised on petition for error coram nobis for the same reasons stated in Section A above.

C.

THE SENTENCING INSTRUCTION IMPERMISSIBLY FAILED TO INSURE THAT, IF THE DEATH SENTENCE WERE IMPOSED, IT WOULD BE IMPOSED BY A JURY THAT HAD DECIDED THAT THE AGGRAVATING CIRCUMSTANCES  WHEN DISCOUNTED BY THE MITIGATING CIRCUMSTANCES  WERE STILL SUFFICIENT TO IMPOSE THE DEATH PENALTY.
This proposition may not now be raised on petition for writ of error coram nobis for the same reasons stated in Section A above.

*1367 D.

THE SENTENCING INSTRUCTION IMPERMISSIBLY SHIFTED THE BURDEN TO THE PETITIONER TO PROVE THAT THE DEATH PENALTY SHOULD NOT BE IMPOSED.
This proposition may not now be raised on petition for writ of error coram nobis for the same reasons stated in Section A above.

E.

THE FINDING BY THE JURY OF THE "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL" AGGRAVATING CIRCUMSTANCE VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS.
This proposition was not presented on direct appeal. Therefore, it is now procedurally barred and may not be raised for the first time on this petition for writ of error coram nobis. Wheat, supra.

F.

THE MISSISSIPPI SUPREME COURT'S REVIEW OF THE SENTENCE IN THIS CASE VIOLATED STATUTORY AND CONSTITUTIONAL REQUIREMENTS.
The petitioner did not raise this proposition on his direct appeal. Therefore, it is now procedurally barred from being raised for the first time on this petition for writ of error coram nobis.

G.

THE FAILURE TO TRANSCRIBE CLOSING ARGUMENTS OF COUNSEL AT THE SENTENCING PHASE VIOLATED PETITIONER'S CONSTITUTIONAL AND STATUTORY RIGHTS.
The petitioner did not raise this proposition on his direct appeal. He is now procedurally barred from raising it for the first time on this petition for writ of error coram nobis. Wheat, supra.

H.

THE PROSECUTOR'S INFLAMMATORY EXHORTATIONS AT SENTENCING WERE CONSTITUTIONALLY IMPERMISSIBLE.
The petitioner did not raise this proposition on direct appeal. He is procedurally barred from raising it now for the first time on this petition for writ of error coram nobis. Wheat, supra.

I.

THE FAILURE TO REQUIRE THE JURY TO FIND THAT PETITIONER POSSESSED THE REQUISITE INTENT TO KILL THE VICTIM VIOLATES PETITIONER'S CONSTITUTIONAL RIGHTS.
This proposition was not raised on direct appeal. It is therefore procedurally barred from being raised for the first time on this petition for writ of error coram nobis. Wheat, supra.

J.

USE OF THE "COURSE OF A FELONY" AGGRAVATING CIRCUMSTANCE VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS.
This proposition was not raised on direct appeal. Petitioner is now barred from raising it for the first time on this petition for writ of error coram nobis. Wheat, supra.

K.

THE MISSISSIPPI SUPREME COURT'S REVIEW WAS UNCONSTITUTIONALLY DEFICIENT BECAUSE THE COURT COMPARED PETITIONER'S CASE ONLY TO OTHER CASES WHERE THE DEATH PENALTY HAD BEEN IMPOSED.
The petitioner failed to raise this proposition on direct appeal. He is now procedurally barred from raising it for the first time on this petition for writ of error coram nobis. Wheat, supra.

*1368 L.

THE PROSECUTOR'S USE OF HIS PREEMPTORY CHALLENGES TO STRIKE ALL POTENTIAL BLACK JURORS WAS PART OF A SYSTEMATIC, REGULAR PRACTICE RESULTING IN EFFECTIVE EXCLUSION OF BLACKS FROM PETIT JURIES.
The petitioner failed to raise this proposition on direct appeal. He is now procedurally barred from raising it for the first time on this petition for writ of error coram nobis. Wheat, supra.

M.

THE RACIALLY DISCRIMINATORY ADMINISTRATION OF THE DEATH PENALTY IN MISSISSIPPI VIOLATES PETITIONER'S RIGHTS ON THE EIGHTH AND FOURTEENTH AMENDMENTS.
The petitioner failed to raise this proposition on direct appeal. He is now procedurally barred from raising it for the first time on this petition for writ of error coram nobis. Wheat, supra.

N.

PETITIONER WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
The petitioner has asserted fourteen points (A through N) on which he relies in support of his claim of ineffective assistance of counsel at trial. Collectively, the allegations contained assertions of facts and factual conclusions which are unsupported by affidavits except the affidavits of Mack Arthur King and counsel which were made on information and belief except as to those things shown by the record. This does not comply with Rule 38 of the Supreme Court Rules of Mississippi. Riley v. State, 254 Miss. 487, 182 So.2d 397 (1966).
In the case of Willie Albert Smith v. State of Mississippi (Petition for writ of error coram nobis), 434 So.2d 212 (Miss. 1983), after restating the substantive test to be employed in analyzing an ineffective assistance counsel claim, to-wit: (A) Whether counsel was reasonably likely to render effective assistance; and (B) Whether counsel in fact rendered effective assistance, we reiterated that a petitioner shoulders the burden of showing that in fact such assistance was not rendered and that a defendant was actually prejudiced by such failure. See Callahan v. State, 426 So.2d 801 (Miss. 1983). We also recognized that the failure to assign the lack of effective assistance of counsel at trial would not constitute a procedural bar to subsequently raising the question either on appeal or in post-conviction relief proceedings such as this.
In Smith, supra, it was stated:
If, after affirmance on direct appeal, a defendant wishes to pursue a claim of ineffective assistance of counsel, he may file an appropriate post-conviction proceeding raising this question. See Read, slip opinion at 19.[2] We held that, assuming that the petitioner's claim stated a prima facie case, he would then be entitled to an evidentiary hearing at the trial court on this question. We also specifically held that "a petitioner desiring such a hearing must tender two tickets at the door: (a) a pleading complying with Rule 38, Mississippi Supreme Court Rules, and (b) a pleading stating facts which, if proved, would entitle petitioner to relief."

In other words, one seeking to maintain the claim of ineffective assistance of counsel must comply with procedures set forth in Rule 38 of the Mississippi Supreme Court Rules and must state with specificity facts which, if proved at a hearing by clear and convincing evidence, would satisfy the substantive requirements which we set forth in Callahan. Stated differently, he must specifically allege facts showing that effective assistance of counsel was not in fact rendered, and he must allege with specificity the fact that but for such purported actions by ineffective counsel, the results of the trial court decision would have been different. Petitioner Smith has failed to comply with these requirements. He has pointed to several instances of alleged examples of ineffective counsel, but he has failed to allege with specificity that *1369 such "shortcomings" were not the result of trial tactics or strategy but were indeed indicia of the fact that petitioner Smith was denied effective assistance of counsel. Likewise, he has not specifically alleged that he was actually prejudiced by such purported ineffectiveness. Under our rule set out in the Callahan case, a petitioner must allege and prove that but for the specific alleged facts set out in his petition, the result of the trial would have been different.
These requirements, although somewhat technical, are matters of substance and are vitally important both for this Court and for a lower court to be adequately apprised of the specific nature of a petitioner's claim of ineffective assistance of counsel... . In pointing to specific alleged examples of ineffective counsel, petitioner Smith goes no farther than the record. He makes no allegations of facts outside the record which he intends to use in support of his ineffective assistance of counsel claim... . Likewise, no affidavits (except Smith's) are attached as to his charge that trial counsel failed to make proper objections, failed to call proper rebuttal witnesses, failed to make "necessary investigations" and prepare for trial... .
We are compelled to note that in the instant case, as is all too often the case in similar post-conviction relief efforts which come before this Court, the petitioner is in actuality merely seeking to relitigate his case. Such is not the proper function of post-conviction relief proceedings in Mississippi. The fair and orderly administration of justice dictates that a person accused of a crime be afforded the opportunity to present his claims before a fair and impartial tribunal. It does not require that he be given multiple opportunities to "take a bite at the apple." Likewise, the orderly administration of justice does not require this Court to "lead a defendant by the hand" through the criminal justice system. It is this Court's responsibility to provide a meaningful opportunity for defendant to raise his claims and have them adjudicated.
Smith neither subscribed nor swore to this petition as it was originally filed, as is required by Mississippi Supreme Court Rule 38. The only affidavit attached to the petition and brief in support thereof was made by Smith's present attorney, who made his affidavit upon "information and belief," not upon facts within his personal knowledge as required by Rule 38. (Emphasis theirs).
[2] Read v. State, 430 So.2d 832 (Miss. 1983).
434 So.2d at 218-220.
Rule 38 of the Rules of the Supreme Court of Mississippi adopted through January 1983 and not otherwise amended, prescribes the procedure to be followed in applications for leave to file petitions for writ of error coram nobis under Mississippi Code Annotated section 99-35-145 (1972). That rule is as follows:
Every application for leave to file a petition for writ of error coram nobis in the lower court shall have attached thereto the original and two executed counter parts of the petition proposed to be filed in the lower court, which shall be sworn to by petitioner. Petitioner's affidavit shall designate specifically what facts, if any, alleged in the petition are within the personal knowledge of petitioner. When the petition contains allegations of fact not within the personal knowledge of petitioner, it shall have attached affidavit or affidavits of some other person or persons having knowledge of the facts which are not within the personal knowledge of petitioner. The failure to attach such affidavits of persons other than petitioner may be excused upon good cause shown. The petition shall state when the facts relied upon for issuance of the writ came to petitioner's knowledge, and shall state sufficient facts to show that there was no want of reasonable diligence on the part of petitioner or his counsel. The petition shall be endorsed by a statement by petitioner's counsel, if any, that he believes the petition for writ of error coram nobis is well taken, and should be issued. The application shall be supported by brief, and failure to file a supporting *1370 brief may be ground for dismissal. In the event leave is granted to file the petition, the original and one executed counterpart of the petition shall be withdrawn and filed in the lower court. (July 28, 1975). (Emphasis added).
As in Smith, supra, we are unable to say from a reading of this record that trial counsel did not render effective assistance to King at the trial of this cause. Also as in Smith, counsel on appeal has made numerous allegations with reference to the availability of proof to support his fourteen (A-N) charges that trial counsel was ineffective. However, other than the affidavits of appellate counsel and the appellant himself, which were made on information and belief, except as to matters that appear in the record, there are no affidavits as required under Supreme Court Rule 38 of persons having knowledge of the facts and the details thereof upon which the appellant predicates his challenge to the effectiveness of trial counsel.
We are therefore of the opinion that the petition for leave to file a petition for writ of error coram nobis should be denied.
PETITION FOR LEAVE TO FILE A PETITION FOR WRIT OF ERROR CORAM NOBIS IN THE CIRCUIT COURT OF LOWNDES COUNTY IS DENIED WITHOUT PREJUDICE.
BROOM, P.J., and ROY NOBLE LEE, BOWLING and DAN M. LEE, JJ., concur.
ROBERTSON, J., PATTERSON, C.J., and HAWKINS and PRATHER, JJ., dissent.
ROBERTSON, Justice, dissenting:

I.
I respectfully dissent from the manner of disposition of those points itemized in paragraphs A through M of the majority opinion.
Let me make clear my position. I would not at this stage hold that Mack Arthur King's death sentence should be vacated or that he is entitled to any other substantive relief. The majority's approach precludes our reaching the merits. Hence, I express no opinion on the merits except to say that King's points are certainly not on their face so frivolous that they ought be dismissed summarily.
Because this is a case in which the penalty of death has been imposed, I would address King's post-conviction, post-affirmance petition for writ of error coram nobis under the format I describe below.

II.

A.
Mack Arthur King's conviction and sentence have been affirmed on direct appeal. King v. State, 421 So.2d 1009 (Miss. 1982). Once any criminal conviction has been finally affirmed in this Court and the time for further direct review has expired, the state's finality interest vests. It is by no means unreasonable or unfair that at this point an additional burden be placed upon the prisoner. He is not automatically entitled to yet another appeal.
Still I perceive no course of logic which would yield the conclusion that finality is the only interest then at stake. If it be shown that the prisoner's conviction or sentence be infected by substantial violations of rights secured by the Constitution or laws of the United States or of this state; and if it further be shown either that had these violations not occurred, the proceedings at trial would have been substantially more favorable to the prisoner or, that there exists good cause why the points were not raised on appeal; then the force of the state's finality interest is overcome. This is particularly so in a death penalty case.
Whenever a prisoner, who has been finally convicted in the courts of the State of Mississippi and whose conviction has been finally affirmed by this Court, seeks post-conviction relief in this Court, and where such prisoner claims that his conviction and sentence have been infected by violations of rights secured to him by the Constitution of the United States or by the Constitution and laws of the State of Mississippi, and where the issues presented were not procedurally preserved at trial or have not previously been tendered on direct appeal, the prisoner should be required to show either
*1371 (a) that there exists good cause why the point was not procedurally preserved at trial, or raised on direct appeal, or both, as the case may be,
or
(b) that the rights violations asserted did in fact subject him to a substantial detriment at trial; that is, had the rights violations not occurred, the trial process  as distinguished from its outcome  would likely have been more favorable to him than it was.[1]
Beyond that, there is no sound reason why this Court should erect a procedural rule which would bar it from noticing, on direct appeal or on post-conviction proceedings, plain error. This Court's first duty is to administer justice. Particularly is this so in death penalty cases.

B.
In my view, our decision on King's petition should be as follows:
First, with respect to all claims asserted which were adjudicated on their merits on direct appeal, the petition should be dismissed. The previous adjudication is final. Res judicata precludes relitigation in the courts of this state.
Second, with respect to non-constitutional claims which either (a) were not properly preserved at trial or (b) were not presented on direct appeal, those claims have been effectively waived. In its supervisory capacity over its own judgments, this Court has the capacity to notice errors of this sort. Our plain error rule applies here equally as it does on direct appeal. Suffice it to say that in the case at bar I detect no alleged non-constitutional errors sufficiently plain to be noticed here.
Third, with respect to those claims asserted by King which are of constitutional dimensions, federal or state, and with respect to which the claim either was not timely preserved at trial and/or presented on direct appeal, we should hear King's claims, provided he can demonstrate either cause or prejudice. Again, the Court retains plain error powers even though neither cause nor prejudice be shown.

C.
Once we reach the merits of King's constitutional claims, I would hold he must still hurdle the constitutional harmless error rule.[2] Not all errors of unconstitutional proportions will require that the death sentence be vacated. Where we can say with confidence that constitutional errors were harmless beyond a reasonable doubt[3], it becomes our duty to leave the death sentence undisturbed.
In cases such as this, state harmless error rules have no force or effect. Federal constitutional law applies. Chapman v. California, 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967). Chapman holds that:
"before a federal constitutional error can be held harmless, the court must be able *1372 to declare a belief that it was harmless beyond a reasonable doubt". 386 U.S. at 24, 87 S.Ct. at 828.
Chapman was reaffirmed in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
"We do not depart from Chapman; nor do we dilute it be inference. We reaffirm it." 395 U.S. at 254, 89 S.Ct. at 1728.
Only if there is a reasonable possibility that the constitutional error contributed to the conviction must it be set aside. Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). If all of this is true in a non-capital context, surely it is even more so where the defendant has been sentenced to die.

IV.
Because in Sections A through M the majority fail to employ this process or methodology in the adjudication of Mack Arthur King's post-conviction, post-affirmance error coram nobis application  and not because the majority denies to King any relief, I dissent.

V.
There is a final point that needs to be mentioned. I object strenuously to footnote one on page one in the majority opinion. That footnote in effect amends and modifies nunc pro tunc a series of orders previously entered by the Court denying other condemned prisoners' post-conviction applications for writ of error coram nobis. Those orders were entered at varying times over the past four years  at times when a part of the Court's personnel was different.
If the Court wishes to alter the form or manner of disposing of such cases in the future, it may do so. To attempt to go back to different cases decided on different occasions in years past and say what was meant by the orders entered then is, in my view, wholly inappropriate.
I respectfully dissent.
PATTERSON, C.J., and HAWKINS and PRATHER, JJ., join in this dissent.
NOTES
[1] We address each issue raised on this petition because several of our orders disposing of post-conviction relief petitions which were denied without opinions have been erroneously interpreted to be decisions on the merits. Gray v. Lucas, 710 F.2d 1048 (5th Cir.1983); Jones v. Thigpen, 555 F. Supp. 870 (S.D.Miss. 1983). In those cases, more or less routine orders were entered on the minutes by the Clerk of this Court. We do not consider those orders to be opinions of this Court and they do not mean that each issue raised was considered on the merits. In fact, the issues raised were, for the most part, procedurally barred. Such routine orders heretofore or hereafter entered by the Clerk of this Court would more appropriately be reviewed under the guidelines of Preston v. Maggio, 705 F.2d 113 (5th Cir.1983), and not under Miller v. Estelle, 677 F.2d 1080 (5th Cir.1982).
[1] I have set forth the rationale supporting the cause or prejudice test articulated above in my dissenting opinion in Evans v. State, 441 So.2d 520, 524 (Miss. 1983). There is no reason to repeat that discussion here. I emphasize that this hurdle ought be placed in the path of the condemned prisoner petitioner only on post-conviction proceedings. Where errors have gone unpreserved in connection with proceedings on direct appeal, a more liberal "deliberate by-pass" standard ought be applied. Hill v. State, 432 So.2d 427, 450-451 (Miss. 1983) (Robertson, J., dissenting).
[2] This "hurdle" will have more meaning in "cause" cases than in "prejudice" ones. Compare the "cause or prejudice" test described in Section II(A) above. Suffice it to say that, where a prisoner has been "prejudiced" by a constitutional error in the sense described above, it is difficult to conceive how that error might be said to have been harmless.
[3] The "reasonable doubt" concept has long been fundamental in the criminal law processes in this country. It is nowhere expressly stated in the Constitution. Still, there is no doubt that the entitlement of an accused, before he can be convicted and punished, to be found guilty beyond a reasonable doubt is a requirement of due process. In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). By the same token, no conviction can stand in the face of substantial errors committed by the trial court, unless it can be said beyond a reasonable doubt that the error(s) did not contribute to the defendant's conviction.